IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-288 |
| PHILIP C. PULLEY | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Philip C. Pulley lied about his residency in order to vote multiple times in the same federal elections. Although he has lived in and voted in Montgomery County, Pennsylvania, for approximately three decades, Pulley also registered to vote in Broward County, Florida, in 2018, and in Philadelphia County, Pennsylvania, in 2020. To support his Florida voter registration application, Pulley listed a second home as his primary residence, and to support his Philadelphia voter registration application, Pulley provided a false address and false social security number. Pulley then voted twice in the 2020 general election and three times in the 2022 general election, each of which featured federal candidates for office.

Through his actions, Pulley committed the crimes of voter registration fraud, in violation of 52 U.S.C. § 10307(c), multiple voting in the same federal election, in violation of 52 U.S.C. § 10307(e), and voter fraud, in violation of 52 U.S.C. § 20511(2). The Presentence Investigation Report has correctly calculated that Pulley's total offense level is 2 and his criminal history category is I, which means that his imprisonment range under the United States Sentencing Guidelines is 0-6 months, and his fine range is $200 to $9,500. For reasons detailed below, the government respectfully submits that a prison sentence within that range and a fine of $9,500 would best serve the sentencing factors set forth in 18 U.S.C. § 3553(a).

1

I.  **STATEMENT OF THE CASE**

    A.  **Procedural History**

On August 9, 2024, the United States Attorney filed a five-count Information against Pulley, charging him with one count of voter registration fraud, in violation of 52 U.S.C. § 10307(c) (Count One), two counts of voter fraud, in violation of 52 U.S.C. § 20511(2) (Counts Two and Five), and two counts of voting more than once in the same federal election, in violation of 52 U.S.C. § 10307(e) (Counts Three and Four).

On September 25, 2024, the defendant appeared before the Honorable Mitchell S. Goldberg, Chief Judge of the United States District Court for the Eastern District of Pennsylvania, and pleaded guilty to Counts 1, 2, 4, and 5 of the Information, pursuant to a written plea agreement. As part of that agreement, the government has agreed to move to dismiss Count 3 of the Information at the time of sentencing.

    B.  **Offense Conduct**

At all times relevant to this case, defendant Pulley was a United States citizen residing in Huntingdon Valley, in Montgomery County, in the Eastern District of Pennsylvania. Since about 1996, Pulley has been registered to vote in Montgomery County, Pennsylvania, and from 2005 through 2023, he has had a history of voting using his Huntingdon Valley address.

On or about August 1, 2018, while maintaining his home address and voter registration in Montgomery County, Pennsylvania, Pulley also registered to vote in Broward County, Florida, using as his home address an address in Lighthouse Point, Florida, where Pulley had established a secondary residence. Pulley then cast votes in Broward County, Florida, on or about November 6, 2018, and on or about March 17, 2020.

On or about February 10, 2020, while maintaining his home address and voter registration in Montgomery County, Pennsylvania, and his voter registration in Broward County, Florida, Pulley also completed a voter registration application to vote in Philadelphia County, Pennsylvania. On his Philadelphia County voter registration form, Pulley provided false information about his address, his previous address, and his social security number. Specifically, Pulley falsely stated that he resided in a Philadelphia apartment, intentionally gave a false prior address, and intentionally provided false information about the last four digits of his social security number.

On or about October 22, 2020, Pulley applied for a mail-in ballot to vote in Philadelphia County in the 2020 general election, which included the race for President and Vice President of the United States. This application was denied, but Pulley nonetheless cast two other ballots in the 2020 general election. Prior to November 3, 2020, Pulley applied for and submitted an absentee ballot in Broward County, Florida. Then, on November 3, 2020, Pulley voted in-person at the polls in Montgomery County, Pennsylvania, in the 2020 general election.

On November 3, 2022, Pulley voted early in Broward County, Florida, in the 2022 general election. Five days later, on November 8, 2022, Pulley flew from Fort Lauderdale, Florida, to Philadelphia, Pennsylvania, and voted in-person at two different polling locations in the Eastern District of Pennsylvania: one in Montgomery County and one in Philadelphia County. At both Pennsylvania polling locations, the ballots included elections for the position of United States Senator from Pennsylvania. Pulley knew that he did not live in Philadelphia County at the time he cast his ballot in the 2022 general election in Philadelphia County.

In addition to falsely registering to vote in Philadelphia County in 2020 and fraudulently voting in Philadelphia County in the 2022 general election, the defendant cast fraudulent votes in Philadelphia County in the 2021 general municipal election and 2023 general municipal election while also casting votes in those elections in Montgomery County. The defendant also attempted to cast fraudulent votes in Philadelphia County during the 2020 general election, the 2021 party primary election, and the 2023 party primary election.

II.     **SENTENCING CALCULATION**

    A.     **Statutory Maximum Sentence**

Pulley is facing the following total statutory maximum sentences: Count One (voter registration fraud), 5 years' imprisonment, a 3-year period of supervised release, a $10,000 fine, and a $100 special assessment; Counts 2 and 5 (voter fraud), 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment on each count; and Count 4 (voting more than once in a federal election), 5 years' imprisonment, a 3-year period of supervised release, a $10,000 fine, and a $100 special assessment. In total, therefore, the defendant could be sentenced to 20 years' imprisonment, 3 years' supervised release, a $520,000 fine, and a $400 statutory assessment.

    B.     **Guidelines Calculation**

The government agrees with the PSR's guidelines calculations. The 2024 Guidelines Manual indicates that Counts 1, 2, 4, and 5 should be grouped together for guideline calculation purposes because the counts involve two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. *See* U.S.S.G. § 3D1.2(b). The applicable guideline for violations of 52 U.S.C. §§ 10307(c) and (e) and 20511

is U.S.S.G. § 2H2.1, which provides that the base level for Pulley's crimes is 6. U.S.S.G. § 2H2.1(a)(3)(B) and (C). There are no specific offense enhancements or other upward adjustments to Pulley's base offense level.

There are, however, two applicable downward adjustments. Under Section 3E1.1(a), Pulley is entitled to a 2-level downward adjustment to 4 for acceptance of responsibility. Additionally, Pulley meets the criteria for being a zero-point offender under Section 4C1.1, so he is entitled to another 2-level downward adjustment to 2. Pulley has no prior convictions, so he is in criminal history category I.

With a total offense level of 2 and a criminal history category of I, Pulley's imprisonment range under the guidelines is 0-6 months, and his fine range is $200 to $9,500. The PSR has determined that Pulley has sufficient liquid assets that would enable him to pay a within-Guidelines fine. PSR ¶ 78.

### III. ANALYSIS

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted), *cited favorably in United States v. Friedman*, 2011 WL 4470674, * 14 (3d Cir. Sept. 28, 2011); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (*en banc*).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *Cooper*, 437 F.3d at 329. *See also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

As indicated above, the defendant's properly calculated advisory sentencing range under the current guidelines is 0-6 months' imprisonment, and his fine range is $200 to $9,500. A prison sentence within that range and a fine of $9,500 would best serve the sentencing factors set forth in 18 U.S.C. § 3553(a). Those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide

just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1]

Sections 3553(a)(4) and (a)(5) specifically direct the Court to consider the applicable guidelines and commentary, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing among similarly situated defendants. Collectively, therefore, they counsel for the imposition of a within-Guidelines sentence of 0-6 months' imprisonment and a fine of between $200 and $9,500.

The nature and circumstances of the defendant's offenses support the imposition of a within-Guidelines prison sentence and a fine of $9,500. The right to vote for one's national leaders is a privilege, and people like Pulley who abuse their privilege by voting more than once in the same federal election demonstrate both a stunning arrogance and a callous disregard for

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

the rights of their fellow citizens. Lying on a voter registration application and attempting to vote multiple times in the same election also undermines public confidence in the legitimacy of American elections. Pulley's fraudulent registration and voting conduct was premeditated, repeated in two jurisdictions, and continuous over many years – it was not a one-time, spontaneous act. That premeditation and repetition make the circumstances of this offense more serious. Pulley's actions merit some restriction on his liberty, potentially including a term of imprisonment of up to six months, along with a fine of $9,500. Pulley's conduct also warrants the inclusion of a significant community service obligation as a condition of any term of probation or supervised release that this Court imposes at sentencing.

The history and characteristics of the defendant also support the imposition of a sentence of 0-6 months' imprisonment, a fine of $9,500, and the inclusion of a substantial community service requirement as a condition of probation or supervised release. According to the PSR, Pulley has no criminal record, but his financial dealings have resulted in Pulley or his company being involved in more than three dozen lawsuits. *Id.* ¶ 77. This Court can consider all of the circumstances described in the PSR when deciding what restrictions on Pulley's liberty would be appropriate here, how much of a fine he should pay, and how many hours of community service Pulley should be ordered to perform.

A sentence that includes some restrictions on Pulley's liberty, a fine of $9,500, and a substantial community service obligation would also promote respect for the law and provide just punishment for Pulley's crimes. Such a sentence also serve the sentencing goal of general deterrence. It would send a message to other people in Pulley's position that punitive

8

consequences await them if they lie on their voter registration applications and seek to vote multiple times in the same elections.

The sentencing goal of providing Pulley with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, id. § 3553(a)(2)(D), is not applicable in this case.

## IV.    CONCLUSION

For all the foregoing reasons, the government respectfully requests that this Court sentence Pulley to a within-Guidelines sentence of 0-6 months' imprisonment and a fine of $9,500, and that Pulley's sentence include a substantial community service obligation for Pulley as a condition of any sentence of probation or supervised release that it imposes.

Respectfully submitted,
JACQUELINE C. ROMERO
United States Attorney

*/s/ Mark B. Dubnoff*
MARK B. DUBNOFF
NANCY E. POTTS
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Government's Sentencing Memorandum was served by email upon Brian McMonagle, counsel for the defendant.

Date: January 2, 2025                    */s/ Mark B. Dubnoff*
                                          MARK B. DUBNOFF